IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH MANSOUR, | ) | CASE NO. 1:22-CV-00557-SO |
| Plaintiff, | ) | |
| | ) | JUDGE SOLOMON OLIVER, JR. |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL ARMSTRONG |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | **REPORT AND RECOMMENDATION** |
| Defendant, | ) | |
| | ) | |

## I.    INTRODUCTION

Plaintiff Joseph Mansour ("Mr. Mansour") seeks judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Supplemental Security Income ("SSI"). (ECF Doc. 1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). Pursuant to Local Civil Rule 72.2, this matter was referred to a magistrate judge for preparation of a Report and Recommendation, and it was subsequently reassigned to me pursuant to General Order No. 2022-14. For the reasons set for the below, I RECOMMEND that the final decision of the Commissioner be AFFIRMED.

## II.    PROCEDURAL HISTORY

On April 15, 2020, Mr. Mansour filed an application for SSI, alleging a disability onset date of March 14, 2010. (Tr. 15).[1] His application was denied initially on August 6, 2020, and

---

[1] The transcript referred to in this Report and Recommendation can be located at ECF Doc. 7 on CM/ECF.

upon reconsideration on September 24, 2020, and Mr. Mansour requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On April 23, 2021, an ALJ held a hearing, during which Mr. Mansour, represented by counsel, and an impartial vocational expert testified. (Tr. 28-51). On May 11, 2021, the ALJ issued a written decision finding Mr. Mansour was not disabled. (Tr. 15-23).  The ALJ's decision became final on March 21, 2022, when the Appeals Council declined further review. (Tr. 1). Mr. Mansour asserts the following single assignment of error in his merits brief:

1. The ALJ erred in the evaluation of Mr. Mansour's symptoms and their impact upon his residual functional capacity.

(ECF Doc. 11 at 7).

### III.    BACKGROUND INFORMATION

#### A. *Personal, Education, and Vocational Experience*

Mr. Mansour was born in 1988, and he was 31 years old on the alleged onset date. (Tr. 22). At the time of the hearing, Mr. Mansour testified that he had a driver's license and lived with his brother. (Tr. 33). He graduated from high school and attended college, but he testified that he withdrew from college because of his health issues. (*See* Tr. 34). Mr. Mansour testified that he last worked as an intern at the Cleveland Clinic in the summer of 2008. (Tr. 35).

#### B. *Relevant Hearing Testimony*

#### 1. **Mr. Mansour's Testimony**

Mr. Mansour testified that he only performs limited household chores (*i.e.*, taking out the garbage, vacuuming, and washing dishes) and that his brother – with whom he lives – performs the majority of the household chores due to Mr. Mansour's abdominal pain and fatigue. (Tr. 37). Mr. Mansour testified that he has a few friends from high school and spends time with them once a month, or once every two months. (*Id.*). He testified that his abdominal pain and rectal pain

mainly prevents him from working. (Tr. 38). He stated that his chronic pouchitis specifically causes frequent rectal pain. (*See* Tr. 38-39). He provided testimony that his abdominal and rectal pain intensifies when he uses the restroom, eats, or is constipated. (*See* Tr. 38-40).

He testified that before his involvement in a 2015 accident, he would eat two "fairly average size" meals a day but would avoid breakfast. (Tr. 40). After the accident, however, he testified that he experienced constipation due to pelvic floor dysfunction, forcing him to eat approximately five to six meals a day. (*Id.*). Even after some improvement with his pelvic floor dysfunction due to physical therapy, he stated that he has continued this diet to avoid constipation. (*Id.*). He testified that he would not be able to perform his job due to his diet because he would not be able to eat before or during the job. (*Id.*). He testified that not eating anything would not eliminate his usage of the restroom. (*Id.*). He testified that he uses the bathroom five to seven times a day. (Tr. 40-41). He explained that sitting increases his abdominal pain, so he tries to lie back as much as possible. (Tr. 42).

### 2.Vocational Expert's Testimony

The vocational expert ("VE") testified that Mr. Mansour's summer internship was not a job defined under the *Dictionary of Occupational Titles*. (Tr. 48). The ALJ asked the VE to consider a person with Mr. Mansour's age, education, and lack of past work experience who could perform at a light exertional level with the conditional limitations of frequently climbing ramps and stairs; occasionally climbing ladders, ropes, or scaffolds; occasionally stooping; and occasionally crawling. (Tr. 48-49). The VE opined that the individual could perform the jobs of a cashier and housekeeper. (Tr. 49). He further opined that the employer's tolerance for time off task on average would be no more than 10% of the time maximum to maintain employment, based on the VE's training and experience in job placement and retention. (*Id.*). Mr. Mansour's attorney

asked the VE if an individual that would require five additional unscheduled breaks during the workday for 10 minutes each would be able to maintain ongoing substantial gainful employment. (Tr. 50). The VE opined that the individual would not be able to maintain ongoing substantial gainful employment. (*Id.*). The attorney also asked the VE whether an individual that would be absent from work on a chronic ongoing basis of two or more workdays per month would be able to maintain substantial gainful employment. (*Id.*). The VE again opined that the individual would not be able to maintain substantial gainful employment. (*Id.*).

### C.  *Relevant Medical/Non-Medical Opinion Evidence*

### 1. <u>State Agency Medical Consultants</u>

#### a.  **Elizabeth Das, M.D.**

Dr. Das determined that one or more of Mr. Mansour's medically determinable impairments could reasonably be expected to produce his pain or other symptoms. (Tr. 55). She found, however, that Mr. Mansour's statements about the intensity, persistence, and functionally limiting effects of his symptoms were not substantiated by the objective medical evidence alone. (*Id.*). She assessed that Mr. Mansour's statements regarding his symptoms, considering the total medical and non-medical evidence in the file, were fully consistent. (*Id.*). Dr. Das found that Mr. Mansour could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. (*Id.*). She also opined that Mr. Mansour could stand and/or walk with normal breaks, and sit with normal breaks, for a total of approximately six hours in an eight-hour workday. (*Id.*). Regarding Mr. Mansour's postural limitations, Dr. Das determined that Mr. Mansour was "unlimited" in regard to balancing, kneeling, and crouching. (Tr. 55-56). She also found that Mr. Mansour could frequently climb ramps or stairs, occasionally climb ladders/ropes/scaffolds, stoop (*i.e.*, bending at the waist), and crawl. (*Id.*).

**b.  Dana Schultz, M.D.**

Dr. Schultz affirmed Dr. Das's findings regarding exertional and postural limitations. (Tr. 60-61). She also opined that Mr. Mansour's pain was expected given his medical impairment, and that his statements regarding his symptoms were fully consistent with the total evidence in the file. 60). She also agreed that Mr. Mansour's statements about the intensity, persistence, and functionally limiting effects of the symptoms were not substantiated by the objective medical evidence alone. (*Id.*). She found that the consistency of Mr. Mansour's statements regarding his symptoms, considering the total medical and non-medical evidence in the file, was fully consistent. (*Id.*).

**2. Anthony Finizia, M.D.[2]**

On September 2, 2020, Dr. Finizia completed a medical source statement after Mr. Mansour visited him for a follow-up appointment for chronic abdominal pain, rectal pain, and constipation. (Tr. 765-66, 793-94). He opined that Mr. Mansour could occasionally lift 10 to 15 pounds, stand or walk less than two hours in an eight-hour workday, and would require approximately four hours of additional unscheduled rest time during a workday. (Tr. 793-94). He also opined that Mr. Mansour experienced severe pain that would interfere with his concentration, take him off task, and cause absenteeism. (Tr. 794). He additionally found that Mr. Mansour would at times need to lay on his side or supine to relieve his pain. (*Id.*).

**D.  Relevant Medical Evidence**

In this proceeding, Mr. Mansour primarily challenges the ALJ's findings with respect to the ALJ's assessment of Mr. Mansour's alleged symptoms caused by his severe impairment of ulcerative colitis, and the ALJ's assessment of its impact upon Mr. Mansour's residual functional

---

[2] This is not an exhaustive summary of Dr. Finizia's limitations. It includes only the limitations mentioned by both Mr. Mansour and the Commissioner.

capacity. (*See* ECF Doc. 11 at 7). The ALJ summarized Mr. Mansour's health records and symptoms related to these issues as follows:

> In terms of the claimant's alleged physical limitations and symptoms including pain, tiredness, and frequency of bowel movements/restroom breaks, a review of the record shows that on April 2, 2019, the claimant returned to see Anthony Finizia, MD, at MetroHealth, about his chronic abdominal pain. On examination, the claimant was interactive, he was nontoxic appearing, and he was in no acute distress. He weighed 165 pounds resulting in a Body Mass Index of 21.77. Dr. Finizia continued the claimant's Methadone for pain control because it was working well overall. The claimant was also taking Entocort as recommended by his gastroenterologist. Dr. Finizia referred the claimant to physical therapy for paradoxical pelvic contractions (4F/23-24).
>
> On May 9, 2019, the claimant attended a physical therapy evaluation with diagnoses of rectal pain, constipation, abdominal pain, and pelvic floor dysfunction. The claimant had a past medical history of UC status post j-pouch surgery and associated pouchitis. His j-pouch procedure was in 2009-2010, and he had no issues until a motor vehicle accident in 2016 where the seatbelt constricted his abdominals. The claimant currently reported that he lived with his brother and his activities of daily living were within normal limits. The claimant further reported that he had abdominal pain with food ingestion, pain associated with bowel movements (BMs), and he had four bowel movements (BMs) per day. The claimant's goal was to decrease pain. Michelle Anselmo, PT, recommended one visit per week for six to eight visits total (4F/25-27).
>
> On July 25, 2019, the claimant attended his fifth physical therapy visit and he reported rectal pain at 1-2/10. The claimant had made slow, but steady progress with his abdominal and rectal pain. The claimant had met one physical therapy goal and he was progressing on all other physical therapy goals. Ms. Anselmo told the claimant to continue with his home exercise program and follow up with her in one month for reassessment (4F/44-47). However, the claimant did not return to see Ms. Anselmo until October 31, 2019…
>
> On October 31, 2019, the claimant returned to see Ms. Anselmo. The claimant reported that he was doing about 50% better with physical therapy exercises, but he had a recent flare up due to non-compliance of his home exercise program and increased stress due to family illness and a death. The claimant was still living with his brother and his activities of daily living were still within normal limits. Ms. Anselmo recommended one visit per week for six to eight visits total and she rated the claimant's prognosis for therapy as "good" (4F/48-52).
>
> On January 2, 2020, the claimant saw Dr. Finizia. The claimant's Methadone for pain control was still working well overall. He had breakthrough symptoms occasionally, but they were better since attending physical therapy. He continued

to have pain with defecation, but it was improving. Dr. Finizia refilled the claimant's Methadone and Entocort and he told the claimant to continue with physical therapy (4F/69-70).

On March 24, 2020, the claimant had a phone visit with Dr. Finizia due to the COVID-19 pandemic. The claimant reported that his physical therapy had been cancelled/postponed due to the pandemic. The claimant further reported that he was doing well. Dr. Finizia refilled the claimant's medications and asked him to follow up in three months (4F/71-72).

On June 4, 2020, the claimant resumed physical therapy. The claimant wanted to decrease his right lower abdominal pain and rectal pain. In terms of function, the claimant's gait was independent; sit to stand ability was within normal limits; bed mobility was independent, but labored; and he had poor body mechanics lifting items from the floor to his waist. Physical therapist Elizabeth Volpe recommended one visit per week for six to eight visits total and she rated the claimant's prognosis for therapy as "fair+" (7F/13-17).

On June 18, 2020, the claimant had a telephone appointment with Dr. Finizia. The claimant said he had a pouchoscopy recently performed by his gastroenterologist that showed stable chronic findings (7F/12; and see 3F/12-16 for the pouchoscopy performed by Bret Lashner, MD, on June 10, 2020 showing a mildly erythematous rectal cuff).

On September 2, 2020, the claimant saw Dr. Finizia. Dr. Finizia noted again that Methadone was working well overall. The claimant's symptoms had progressed somewhat while physical therapy was postponed due to the pandemic, but his occasional breakthrough symptoms were better since physical therapy resumed. On examination, the claimant was interactive, nontoxic appearing, and in no acute distress. The claimant weighed 160 pounds resulting in a Body Mass Index of 21.11. The claimant told Dr. Finizia that he applied for disability and he needed a form completed. The claimant told Dr. Finizia that he had abdominal pain whenever he lifted and he needed to lie down to alleviate pain. Dr. Finizia continued Methadone and physical therapy and he agreed to complete the form for the claimant (7F/3-5).

On September 2, 2020, Dr. Finizia completed a form about the claimant's physical capabilities. Dr. Finizia expressed the following medical opinion: the claimant can occasionally lift/carry 10 to 15 pounds and frequently lift/carry 5 pounds because the claimant reports "marked" pain with lifting; stand and/or walk less than a total of 2 hours of an 8-hour workday due to abdominal pain with the claimant reporting that he gets easily fatigued and dehydrated; occasionally balance and all other postural activities are rare or never; occasionally reach and rarely push/pull; avoid temperature extremes due to dehydration when too hot; he needs to alternate positions "at will"; he has "severe" pain that interferes with concentration, takes

him off task, and causes absenteeism; and he will need an unscheduled rest period of about 4 hours in an 8-hour workday (9F).

…

On December 2, 2020, the claimant had a telephone appointment with Dr. Finizia. Dr. Finizia noted again that Methadone was working "well" overall. The claimant's had stopped going to physical therapy due to a spike in COVID-19 cases, but he was doing his home exercise program. Dr. Finizia refilled the claimant's Methadone for chronic abdominal pain. He asked the claimant to follow up with him in three months (12F/6-7).

…

Regarding frequency of bowel movements, the claimant told Ms. Anselmo that he had four bowel movements (BMs) per day (4F/25-27). However, he did not indicate that he stayed at home most of time because of a restroom issue. Furthermore, it does not appear that he talked with Dr. Finizia or Dr. Lashner about any restroom issue interfering with his ability to leave home. On April 2, 2019, the claimant told Dr. Finizia that he would eat a "small dinner" to avoid needing to "defecate at night" (4F/23).

(Tr. 18-21).

## IV.    THE ALJ'S DECISION

In his May 11, 2021 decision, the ALJ made the following findings:[3]

1. The claimant has not engaged in substantial gainful activity since April 15, 2020, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairment: ulcerative colitis (UC) status post jpouch surgery (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he can frequently climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; occasionally stoop; and occasionally crawl.

---

[3] The ALJ's findings are summarized.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born [in 1988] and was 31 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since April 15, 2020, the date the application was filed (20 CFR 416.920(g)).

(Tr. 17-23).

## V. LAW AND ANALYSIS

### A. Standard of Review

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc.*

9

*Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently[.]" *Cutlip* at 286; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059-60 (6th Cir. 1983).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (alteration in original)).

### B. *Standard for Disability*

The Social Security regulations outline a five-step sequential evaluation process that the ALJ must use in determining whether a claimant is disabled: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether

the claimant can perform her past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that he is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.*

### C.  SSR 16-3p: Subjective Symptoms Assessment

A claimant's subjective symptom complaints may support a disability finding only when objective medical evidence confirms the alleged severity of the symptoms. *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989). An ALJ is not required to accept a claimant's subjective symptom complaints, however, and may properly discount the claimant's testimony about his symptoms when it is inconsistent with objective medical and other evidence. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003); SSR 16-3p, 2016 SSR LEXIS 4 *15 (Oct. 25, 2017) ("We will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and we will evaluate whether the statements are consistent with objective medical evidence and the other evidence."). In evaluating a claimant's subjective symptom complaints, an ALJ may consider several factors, including the claimant's daily activities, the nature of the claimant's symptoms, the claimant's efforts to alleviate his symptoms, the type and efficacy of any treatment, and any other factors concerning the claimant's functional limitations and restrictions. SSR 16-3p, 2016 SSR LEXIS 4 *15-19; 20 C.F.R. §§ 404.1529(c)(3),

416.929(c)(3); *see also Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013)

(stating that an ALJ properly considered a claimant's ability to perform day-to-day activities in

determining whether his testimony regarding his pain was credible).

### D.  Cherry Picking ("Parsing the Record")

The regulations compel ALJs to "consider all evidence available in [an] individual's case

record." 42 U.S.C. § 423(d)(5)(B). However,

> an ALJ may not selectively include only those portions of the medical evidence that
> places a claimant in a capable light, and fail to acknowledge evidence that
> potentially supports a finding of disability. Courts have not hesitated to remand
> under such circumstances. *See, e.g.*, *Gentry* [*v. Comm'r of Soc. Sec.*, 741 F.3d 708,
> 724 (6th Cir. 2014)] (reversing where the ALJ "cherry-picked select portions of the
> record" rather than doing a proper analysis); *Germany–Johnson* [*v. Comm'r of Soc.
> Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008)] (finding error where the ALJ was
> "selective in parsing the various medical reports"); *see also Williams v. Colvin*,
> 2017 WL 1319781 at * 16 (N.D Ohio Feb. 1, 2017), *report and recommendation
> adopted by*, 2017 WL 1304475 (N.D. Ohio April 7, 2017); *Ackles v. Colvin*, 2015
> WL 1757474 at * 6 (S.D. Ohio April 17, 2015), *report and recommendation
> adopted by*, 2015 WL 2142396 (S.D. Ohio May 6, 2015) ("The ALJ did not
> mention this objective evidence and erred by selectively including only the portions
> of the medical evidence that placed Plaintiff in a capable light.") … *Taylor v.
> Comm'r of Soc. Sec.*, 2014 WL 1874055 at * 4 (N.D. Ohio May 8, 2014) (stating it
> "is clear that an ALJ may not determine the RFC by failing to address portions of
> the relevant medical record, or by selectively parsing that record—i.e.,
> 'cherrypicking' it—to avoid analyzing all the relevant evidence. This is particularly
> so when the evidence ignored is from a treating physician.["]).

*Davidson v. Berryhill*, No. 16-cv-2621, 2017 WL 4682343, at *17 (N.D. Ohio Oct. 18, 2017).

At the same time, "it is well settled that …an ALJ can consider all the evidence without

directly addressing in his written decision every piece of evidence submitted by a party. Nor must

an ALJ make 'explicit credibility findings' as to each bit of conflicting testimony, so long as his

factual findings as a whole show that he 'implicitly resolve[d]' such conflicts." *Kornecky v.

Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006); *accord Thacker v. Comm'r of

Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004). Notably, there is a difference "between what an

ALJ must consider and what an ALJ must discuss in a written opinion." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (endorsing the Third Circuit's analysis in *Bencivengo v. Comm'r of Soc. Sec.*, 251 F.3d 153 (table), No. 00–1995 (3d Cir. Dec. 19, 2000) ("[T]he ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record."). Further, "'an ALJ's failure to cite specific evidence does not indicate that it was not considered.'" *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 489 (6th Cir. 2005) (quoting *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004)). Similarly, the Sixth Circuit has noted that cherry-picking arguments can "cut[] both ways," as they may turn on whether the ALJ's decision falls within his "zone of choice" under substantial evidence review. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 285 (6th Cir. 2009). Indeed, what plaintiff-appellants have called cherry-picking "can [at times] be described more neutrally as weighing the evidence," and the claimant bears the burden of persuading the court "that the ALJ erred in conducting this difficult task." *Id.* at 284.

### E.  Whether the ALJ Erred in His Assessment of Mr. Mansour's Alleged Symptoms and Residual Functional Capacity

#### 1. Parties' Arguments

##### a.  Mr. Mansour's Arguments

Mr. Mansour asserts that the ALJ erred in his evaluation of Mr. Mansour's symptoms and their impact on Mr. Mansour's residual functional capacity. First, he argues that the medical opinion evidence supports that his statements regarding his symptoms are fully consistent with the total evidence of the record. (ECF Doc. 11 at 8). He also asserts that the state agency physicians both found that his pain was reasonable and within expectations given his medical impairment, and that his statements regarding his symptoms were fully consistent with the totality of the

evidence in the file. (Tr. 55, 60). Further, he states that Dr. Finizia, his primary care physician, completed a medical source statement that restricted Mr. Mansour due to abdominal pain, fatigue, and dehydration. (Tr. 793-94). Dr. Finizia found that Mr. Mansour should have the ability to alternate positions and noted that Mr. Mansour experiences severe pain that will: (1) take him off task; (2) interfere with concentration; (3) cause absences; (4) at times, require Mr. Mansour to lay supine or on his side to relieve pain; and (5) require Mr. Mansour to take additional breaks up to four hours a day. (Tr. 794). These findings, according to Mr. Mansour, were either ignored or rejected by the ALJ. (ECF Doc. 11 at 9).

Mr. Mansour states that the state agency physicians' opinions were found to be persuasive by the ALJ, and their findings regarding Mr. Mansour's exertional capacity were adopted. (*Id.* (citing Tr. 18, 22)). However, Mr. Mansour asserts that the ALJ failed to address the physicians' findings that Mr. Mansour's statements regarding his symptoms were fully consistent with the total evidence in the file. (*Id.* (citing Tr. 22, 55, 60). Further, Mr. Mansour argues that the ALJ rejected the Dr. Finizia's opinion as not persuasive despite the fact that Dr. Finizia "clearly limited" Mr. Mansour because of his pain, and that the state agency physicians found that Mr. Mansour's statements regarding his symptoms were fully consistent with the evidence. (*Id.*).

Mr. Mansour also asserts that the ALJ committed further error by finding, contrary to the opinion evidence, that Mr. Mansour's allegations were out of proportion to the medical evidence. (*Id.* (citing Tr. 18)). Although the ALJ bears the ultimate responsibility of determining disability, Mr. Mansour argues that an ALJ does not have medical expertise and cannot substitute his opinion over the medical opinion of a physician or treating source. (*Id.*). In this case, Mr. Mansour contends that the ALJ substituted his opinion for three medical professionals when he rejected Mr. Mansour's allegations as out of proportion to the medical evidence, and also identified no

restrictions due to Mr. Mansour's pain, fatigue, dehydration, and need to alternate positions, take extra breaks, and use the restroom at least four to six times a day. (*Id.* at 9-10). Accordingly, Mr. Mansour argues that remand is necessary to fully evaluate the impact of Mr. Mansour's symptoms upon his RFC. (*Id.* at 10).

Mr. Mansour's final argument is that the ALJ's assessment of Mr. Mansour's RFC is not supported by substantial evidence. (*Id.* at 10-11). Mr. Mansour contends that the ALJ selectively parsed the record (*i.e.*, "cherry picking") to avoid analyzing all the relevant evidence. (*Id.* at 10). He asserts that the ALJ selectively focused on the evidence and failed to include unscheduled or extra bathroom breaks in the RFC finding, despite accepting evidence of Mr. Mansour's evidence of four bowel movements a day. (*Id.* (citing Tr. 21)). He contends that the ALJ ignored the following relevant evidence:

- Mr. Mansour reported four to seven painful bowel movements a day. (Tr. 40-41, 170-71).

- On March 24, 2020, Dr. Finizia noted some improvement in Mr. Mansour's condition, but found that he experienced continued pain with defecation, due to frequency. (Tr. 215).

- Physical therapy records report that Mr. Mansour's abdomen was tender to palpitation, he was experience four to six bowel movements a day, he had abdominal and rectal pain which increased with bowel movements and bending, and his pain improved with stretching and laying down. (Tr. 708, 710).

Despite this evidence, Mr. Mansour asserts the ALJ's RFC contains no restriction to accommodate Mr. Mansour's need to use a restroom (ECF Doc. 11 at 11 (citing Tr. 18, 21)).

### b. The Commissioner's Arguments

The Commissioner argues that the ALJ provided valid reasons, grounded in the record, in support of his symptoms evaluation and RFC finding. (ECF Doc. 13 at 7). The Commissioner asserts that Mr. Mansour's reliance on the findings of the two state agency physicians who

reviewed the record is "misplaced." (*Id.*). The Commissioner states that the ALJ agreed that Mr. Mansour's "medically determinable impairment could reasonably be expected to cause the alleged symptoms," but he did not believe that the totality of evidence supported Mr. Mansour's allegations to the extent they suggested disabling limitations. (*Id.* (citing Tr. 18 and 20 C.F.R. § 416.929(b)). Furthermore, the Commissioner asserts that, notwithstanding the state agency physician's assessments, both the state agency physicians ultimately assessed limitations consistent with a range of light work. (*Id.* at 8).

Second, the Commissioner contends that Mr. Mansour's reference to Dr. Finizia's medical opinion is unavailing. (*Id.*). The Commissioner asserts that Mr. Mansour has not raised an argument that the ALJ's evaluation of Dr. Finizia's opinion failed to comply with the articulation requirement outlined by 20 C.F.R. § 4016.920c. (*Id.*). Rather, the Commissioner argues that Mr. Mansour "simply asserts" that the ALJ's assessment ignores the fact that Dr. Finizia's opinion was supported by Mr. Mansour's pain complaints and the assessments of the state agency physicians. (*Id.*). But, according to the Commissioner, the ALJ's overall assessment was actually consistent with the state agency physicians' assessment. (*Id.*). Specifically, rather than ignoring Mr. Mansour's allegation of pain, the ALJ provided reasons for finding Mr. Mansour's subjective symptom complaints inconsistent with the overall record. (*Id.*). The Commissioner states that while Mr. Mansour wishes that the ALJ had weighed the evidence differently, that is not a proper basis for remand. (*Id.* at 9).

Finally, the Commissioner contends that Mr. Mansour's final argument—that the RFC should have included the need for unscheduled or extra bathroom breaks—should also be rejected. (*Id.*). The Commissioner asserts that the ALJ did not ignore evidence that Mr. Mansour experienced four to seven painful bowel movements a day. (*Id.*). The ALJ, according to the

Commissioner, considered the following pieces of evidence: (1) Mr. Mansour's testimony that he used the restroom five to seven times a day and would need to use it at least five times while working (Tr. 18) and (2) a treatment record in which Mr. Mansour indicated that he had four bowl movements per day (Tr. 19, 315). The Commissioner further argues that the ALJ expressly discussed Mr. Mansour's need for restroom breaks as part of the RFC finding and declined to include unscheduled bathroom breaks as an additional limitation. (*Id.* (citing Tr. 21)). The Commissioner asserts that Mr. Mansour "does not engage with the ALJ's actual analysis" or explain why four bowel movements a day is inconsistent with full-time work. (*Id.*). Accordingly, the Commissioner asserts that this Court find that substantial evidence supports the Commissioner's determination that Mr. Mansour was not disabled. (*Id.* at 10).

### 2. <u>Analysis</u>

Mr. Mansour assignment of error raises two sub-claims: that (1) the opinion evidence supports Mr. Mansour's statements regarding his symptoms as fully consistent with the total evidence of record; and (2) the ALJ assessment of Mr. Mansour's RFC is not supported by substantial evidence because the ALJ "cherry picked" the record. I find that both sub-claims lack merit.

### a.  The ALJ's Symptoms Evaluation

Mr. Mansour's assertion that the ALJ erred in his evaluation of Mr. Mansour's symptoms is not well-taken because the ALJ provided ample substantial evidence in support of his assessment. In the ALJ's determination of credibility, the ALJ discussed several of the factors for consideration outlined under SSR 16-3p when determining that Mr. Mansour's statements concerning the intensity, persistence, and limiting effects of his symptoms were "out of proportion" to the overall record. (Tr. 18). With respect to the location, duration, frequency, and

intensity of pain or other symptoms, the ALJ noted that the objective medical evidence included unremarkable physical examinations by Dr. Finizia, with no mentions of fatigue or tiredness and Mr. Mansour in no acute distress, as well as a June 2020 pouchoscopy that showed only a mildly erythematous rectal cuff. (Tr.19-20, 21, 218, 280, 313, 766).

With respect to the type, dosage, effectiveness, and side effects of any medication (20 C.F.R. § 416.929(c)(3)(iv)), the ALJ discussed how Mr. Mansour's treatment notes routinely indicated that methadone was working well for pain control. (Tr. 19-20, 21, 214, 217, 321, 730, 766). The ALJ also considered treatment, other than medication, received for symptom relief. 20 C.F.R. § 416.929(c)(3)(v). Specifically, the ALJ noted that physical therapy helped with alleviation of Mr. Mansour's symptoms. (Tr. 19-20, 21, 217, 232, 233). With respect to claimant's daily activities, the ALJ observed that the medical records demonstrated that Mr. Mansour was more active and more capable than alleged. (Tr. 21). The ALJ noted that on May 2019, October 2019, and June 2020, Mr. Mansour reported that he lived with his brother, and his activities of daily living were "within normal limits" or "independent." (Tr. 21, 230, 315, 338, 776).

Mr. Mansour's main contention is that the ALJ's credibility evaluation, despite the reasons discussed above, is error because the state agency physicians determined that his symptoms were "[f]ully consistent" with the overall evidence in the record. (ECF Doc. 11 at 9 (citing Tr. 55, 60)). Yet, this focus is misplaced. First, the ALJ agreed that Mr. Mansour's medically determinable impairment "could reasonably be expected to cause the alleged symptoms," but he determined that the totality of the evidence supported Mr. Mansour's allegations to the extent they suggested disabling limitations. (Tr. 18) ("I find that [Mr. Mansour's] medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely

consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. ***In particular, [Mr. Mansour's] allegations are out of proportion to the medical evidence and other evidence.***") (emphasis added). *See also* 20 C.F.R. § 416.929(b) ("At the [ALJ] or Appeals Council level of the administrative review process, the adjudicator(s) may ask for and consider the opinion of a medical or psychological expert concerning whether your impairment(s) could reasonably be expected to produce your alleged symptoms. The finding that your impairment(s) could reasonably be expected to produce your pain or other symptoms does not involve a determination as to the intensity, persistence, or functionally limiting effects of your symptoms."). And as stated above, the ALJ provided ample evidence in support of this conclusion.

Further, while Mr. Mansour asserts that the ALJ impermissibly substituted his lay opinion for that of the state agency doctors, this claim is unsupported. Indeed, the state agency physicians determined that Mr. Mansour's symptoms were fully consistent with the medical record. However, Mr. Mansour omits the fact that both state agency physicians ultimately expressed that Mr. Mansour retained the ability to perform light exertional work with some postural limitations. (Tr. 55-56, 60-61). The ALJ found these prior administrative medical findings persuasive because they were supported by the unremarkable objective medical evidence and consistent with Mr. Mansour's limited course of treatment. (Tr. 22). And, while both state agency physicians found Mr. Mansour's symptoms to be fully consistent with the record evidence, they determined that Mr. Mansour's statements about the intensity, persistence, and functionally limiting effects of his symptoms were not substantiated by the objective medical evidence alone. (Tr. 55, 60).

Next, Mr. Mansour's citation to Dr. Finizia's opinion does not support his argument that the ALJ's assessment ignored the fact that this opinion was supported by Mr. Mansour's pain complaints and the assessments of state agency physicians. I first note that Mr. Mansour does not

appear to challenge—nor does he articulate any argument—that the ALJ did not comply with the articulation requirement outline at 20 C.F.R. § 4016.920c. Instead, Mr. Mansour asserts that Dr. Finizia "clearly limited Mr. Mansour because of his pain and that the other physicians of the record found that Mr. Mansour's statements regarding his symptoms were fully consistent with the evidence." (ECF Doc. 11 at 9).

Although Mr. Mansour does not directly address the ALJ's evaluation of the persuasiveness of Dr. Finizia, the ALJ's analysis is relevant here. The ALJ provided substantial evidence in support of his conclusion that Dr. Finizia's opinion was unpersuasive. In doing so, the ALJ articulated the supportability and consistency factors outline in 20 C.F.R. § 4016.920c. Under the new SSA regulations, supportability is defined as "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[]…the more persuasive the medical opinion will be." 20 C.F.R. § 404.1520c(c)(1). The ALJ determined that Dr. Finizia's opinion was unpersuasive because there are no examination findings that corroborated Mr. Mansour's fatigue, dehydration, decreased concentration, or off task behavior. (Tr. 20). Next, the ALJ addressed the consistency factor by pointing out that Dr. Finizia's opinion was not consistent with his notations that Mr. Mansour's pain medication was "working well overall." (Tr. 20, 214). C.F.R. § 404.1520c(c)(2) (Consistency is defined as "[t]he more consistent a medical opinion[]…is with the evidence from other medical sources and nonmedical sources in the claim…the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."). Finally, the ALJ articulated an additional reason for finding Dr. Finizia's opinion unpersuasive: that Dr. Finizia failed to support his medical opinion with an adequate explanation. (Tr. 20, 793-94). *See, e.g.*, *Ackles v. Comm'r of Soc. Sec.*, 470 F.Supp.3d 744, 747 (N.D. Ohio July 3, 2020) ("The vagueness of a medical opinion is a proper

basis on which to afford it less weight.") (citing *Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 476 (6th Cir. 2008) and *McGill v. Comm'r of Soc. Sec.*, No. 5:18 CV 4346275, 2019 WL 4346275, at *8 (N.D. Ohio Sept. 12, 2019)). A review of the ALJ's decision reveals that the ALJ adequately articulated why Dr. Finizia's opinion was unpersuasive and provided substantial evidence in support of his conclusion.

Further, the ALJ's limitations were consistent with the limitations proposed by the state agency physicians. As stated above, the state agency physicians opined that Mr. Mansour was able to perform light exertional work with some postural limitations. (Tr. 55-56, 60-61). Significantly, rather than "playing doctor," the ALJ appears to have adopted the *same* limitations proposed by the state agency physicians rather than – as Mr. Mansour alleges – substituting his own opinion. (Tr. 22). Moreover, while both state agency physicians found Mr. Mansour's symptoms to be fully consistent with the record evidence, they determined that Mr. Mansour's statements about the intensity, persistence, and functionally limiting effects of his symptoms were not substantiated by the objective medical evidence alone. (Tr. 55, 60). And as previously discussed in this Report and Recommendation, the ALJ provided substantial evidence in support of his conclusion discounting Mr. Mansour's symptoms and pain allegations and finding Dr. Finizia's opinion not persuasive. Accordingly, I recommend that the Court reject this sub-claim because it lacks merit.

### b. The ALJ's RFC Determination ("Cherry Picking")

Mr. Mansour's argument that the ALJ's RFC should have included the need for unscheduled or extra bathroom breaks is also not well-taken. In support of his argument, Mr. Mansour asserts that the ALJ impermissibly cherry-picked evidence by ignoring the following evidence: (1) Mr. Mansour's hearing testimony that he experienced four to seven painful bowel movements a day (Tr. 40-41); (2) Mr. Mansour's self-completed pain questionnaire where he

reported that he had four to six bowel movements a day (Tr. 170); (3) a March 24, 2020 treatment note from Dr. Finizia noting Mr. Mansour's continued improvement in his condition and continued pain with defecation due to frequency, "although improving" (Tr. 215); and (4) physical therapy records that reported Mr. Mansour's abdomen was tender to palpitation, Mr. Mansour experienced four to six bowel movements a day, Mr. Mansour had abdominal and rectal pain which increased bowel movements, and Mr. Mansour's pain improved with stretching and laying down (Tr. 708, 710). (ECF Doc. 11 at 10-11).

Yet, reading the ALJ's decision as a whole reveals that the ALJ did not ignore evidence regarding Mr. Mansour's frequent bowel movements. *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678-79 ("[W]e read the ALJ's decision as a whole and with common sense."). Specifically, the ALJ noted Mr. Mansour's testimony—the same testimony Mr. Mansour cites— that he used the restroom five to seven times a day and would need to use it at least five times while working. (Tr. 18). Moreover, the ALJ also noted a treatment record where Mr. Mansour reported that he had four bowel movements per day. (Tr. 19, Tr. 315). Furthermore, the ALJ even discussed Mr. Mansour's need for restroom breaks as part of his RFC finding. (Tr. 21). However, the ALJ declined to adopt such a limitation because the record did not indicate that Mr. Mansour was restricted to his home due to the need to use the restroom. (*Id.*) ("From all of this, I find that the claimant's limitations are not as severe as alleged and I decline to include unscheduled restroom breaks in the claimant's residual functional capacity."). Indeed, the ALJ specifically noted in his opinion that "it does not appear that [Mr. Mansour] talked with Dr. Finizia or Dr. Lashner about any restroom issue interfering with his ability to leave home." (Tr. 18-21).Weighing inconsistency unfavorably to Mr. Mansour's position is not cherry picking. *See White v. Comm'r*

*of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) ("[T]he same process can be described more neutrally as weighing the evidence.").

Furthermore, even if the ALJ did not discuss every piece of evidence Mr. Mansour cites, the Sixth Circuit has recognized that an ALJ is not required to specifically discuss every piece of evidence to render a decision supported by substantial evidence. *Rottman v. Comm'r of Soc. Sec.*, 817 F. App'x 192, 195 (6th Cir. 2020) ("An ALJ need not discuss every piece of evidence in the record for the ALJ's decision to stand."); *Boseley v. Comm'r of Soc. Sec.*, 397 F. App'x 195, 199 (6th Cir. 2010); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006).

Mr. Mansour also fails to explain how four to seven bowel movements a day is inconsistent with full-time work or address the ALJ's analysis regarding why he declined to include unscheduled restroom breaks in Mr. Mansour's RFC. (*See generally* ECF Doc. 11 at 10-11). Although Mr. Mansour cites evidence that may indicate that Mr. Mansour has greater limitations, the relevant question is not whether there is evidence to support a ruling different than that reached by the ALJ. *Lebro ex rel. R.L. v. Comm'r*, No. 1:13CV1355, 2014 WL 3749221, at *11 (N.D. Ohio July 29, 2014). Rather, the Court must affirm an ALJ's decision when it is supported by substantial evidence because there is a "zone of choice within which the decisionmaker[] can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). Accordingly, I recommend that the Court reject Mr. Mansour's sole of assignment of error and affirm the Commissioner's decision.

## VI.    RECOMMENDATION

Based on the foregoing, I RECOMMEND that the Court OVERRULE Mr. Mansour's assignment of error and AFFIRM the ALJ's decision.

*s/ Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
United States Magistrate Judge

Dated: April 4, 2023

## VII.   NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates

24

Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).